Mr. Unikowsky. Unikowsky, Mr. Chief Justice, and may it please the Court. Petitioner's brother obtained nearly $270,000 in proceeds from the sales of Polar Pure. Petitioner obtained nothing, yet the government seeks to hold him jointly and severally liable for the entire amount. That position contradicts the text, structure, history, and purpose of Section 853. The government's position boils down to the theory that even though Petitioner did not actually obtain this money, he should be deemed to have obtained it because his co-conspirator did based on supposed background principles of conspiracy law. But those background principles are both inconsistent with the text of Section 853 and also do not apply on their own terms. So to begin with our textual argument, I'd like to focus on the structure of Section 853a, because Section 853a enumerates three categories of property subject to criminal forfeiture. 853a1, at issue here, are proceeds obtained by the illegal activity. 853a2 addresses the instrumentalities of crime, and 853a3 addresses the criminal's interest in a criminal enterprise. So we pointed out in our opening brief that really joint and sever liability doesn't make a lot of sense as to 853a2 and a3, which supports the inference that it also doesn't apply to a1. And the government's brief states that the government states, somewhat surprisingly in my view, that in fact joint and sever liability for co-conspirators applies only as to a1 and does not apply as to a2 and a3. But that position by the government really has no textual basis at all, so far as we can discern. Kagan taken it back and forth about what's new and what's old in the government's theory. Is that part of what's changed in the government's theory or not? That is one thing that's changed.  The government took the exact opposite position and, in fact, persuaded the Third Circuit to apply joint and sever liability under a2, which is one of the reasons we put this argument in our brief. But the government's change in position, I just cannot reconcile it with the statute at all. I mean, the government's theory is that a2 and a3 are somehow tied to ownership, whereas a1 is not. But you cannot get that out of the statute. It just lists three categories of property. And if a2 and a3 are directed to ownership, then so is a1. And conversely, if the government was faithfully applying its background principles, it would apply it to all subsections of 853. I mean, under the government's theory, if one person obtained something, then they all do under a1. Identical rationing would require that if one person, say, uses a car in the conspiracy, they all do, and then there's forfeiture liability for everybody under a2. And so I just don't understand the distinction that the government is drawing here. And the fact that the government feels compelled to argue one thing under a1 and another under a2 and a3, I think, shows that this is really a form of common-law criminal liability that's not required or not authorized by the text. I just want to say one word about a3 in particular, which is about criminal enterprises specifically. That statute says that a criminal defendant forfeits his interest in, only his interest in, the criminal enterprise, not the value of the enterprise as a whole. That's a conspiracy-specific forfeiture statute that requires the person only to forfeit the interest he obtained, which we think is just totally inconsistent with the government's theory that under a1, which is nothing about conspiracy liability, there's this hidden Pinkerton rule. So another argument we make has to do with the rest of Section 853 as a whole, which supports our view that really Section 853a1 is talking about forfeiture of tainted assets. And in the government's brief, again, they agree with this. Surprisingly, in our view, they say that, yes, Section 853a1 only requires a forfeiture of tainted assets, which means there is no joint and sever liability. So what the government has essentially admitted here is that when one person obtains something, in fact, there is no joint and sever liability. Only the tainted assets are subject to forfeiture, so only the person who actually obtains it can forfeit it. And, in fact, at the time that Section 853 was enacted, there was no substitute assets provision, so at that time, just there was no joint and sever liability at all, according to the new theory in the government's brief, which I haven't heard before. So the government's theory is that actually what opens the door to joint and sever liability is the separate substitute assets forfeiture provision in 853p. But that just has no basis whatsoever in the statutory text. I just asked the Court to just read Section 853p. What it says is if, based on an act or omission of the defendant, property described in Section 853a1 is unavailable for a series of enumerated reasons, then the government can seek substitute forfeiture. And I think it's just obvious what that's doing. What it's saying is that if the defendant does something to thwart the forfeiture of the tainted asset, then the Court can go after the defendant's substitute assets. Robertson, I suppose their answer would be that under Pinkerton, when you're talking about the defendant, you're also talking about co-conspirators. Your Honor, first of all, the government doesn't make that argument in their brief, and I actually think it doesn't work, because very frequently the dissipation of assets will not be attributable to other co-conspirators under Pinkerton. Suppose one person goes to Las Vegas and gambles away the proceeds of a completed crime. That would not be in furtherance of the conspiracy. To the contrary, it would just expose the other conspirators to liability. So what's your authority for that proposition? Well, under Pinkerton, the need to reach the substitute assets because of dissipation wouldn't be attributed to the co-conspirator. I think that Pinkerton itself includes a requirement that attribution requires the act to be in furtherance of the conspiracy. So I think the Court would have to ask the Court. Robertson, well, but it's in furtherance of the conspiracy. We're looking at the act. An issue here is dissipation of tainted assets and the need for substitution. I don't know that that's in pursuance of the conspiracy as more as frustrating the identification of the tainted assets. Well, that may be. But I think that when the text of Section 853p imposes a requirement, that specifically because of an act or omission of the defendant, that's what 853p says, that is a part of that prerequisite to obtain forfeiture against the defendant. I think the government either has to show that that's the defendant did something to cause the property to be unavailable, which the government hasn't shown and can't necessarily show in general, or that the act that triggers the substitute forfeiture, which is the dissipation, is attributable to co-conspirators, which the government doesn't think it has to prove and hasn't proved here. And I point out on the facts of this case, there is no showing of unavailability. All that happens is that the government agreed to a plea deal with the brother in which he would only forfeit a subset of all of the tainted assets. And so as far as we know, those assets are just in a bank account somewhere. So the government hasn't even tried to prove the requirements that it claims open the door to joint and several liability. So I think that the reason the government's theory doesn't work is that it's just inconsistent with these background principles, because we just think that the relevant background principles are the ones governing, number one, forfeiture, and, number two, sentencing. And neither of those background principles attributable in either of those areas support joint and several liability. So first, as to forfeiture, as I think the government agrees, the relevant historical tradition is in REM, forfeiture, and there's just no concept of joint and several liability there. Sotomayor, I have just a practical question. Rosenkranz, yes. Sotomayor, would our how would our ruling here affect the RICO forfeiture statute, 1963? Language is very similar. Rosenkranz, yes. So if we rule in your favor, does that mean we undo the RICO statute as well? I think there's a pretty good likelihood of that. I mean, I admit the language is very similar. I haven't studied whether there's some other structural difference. I would guess the government would come up with a way to distinguish this case if it lost this case, but I don't know what that is for sure. But it is true that the language is very similar. I acknowledge that, Your Honor. RICO may be easier to prove, the joint and several concept, because RICO is an enterprise as defined. Rosenkranz, that is true. So the language on the forfeiture provision is similar, but it may be that some background aspect of RICO or some structural, textual argument that doesn't apply here might apply. But I haven't studied that issue specifically, and I'm sure that the government will probably come up with some theory if it doesn't prevail today. Alito, how would this work? How would your rule work as a practical matter in a drug conspiracy case or a racketeering case where the government can prove that a certain amount of money was taken in by the conspiracy over a period of time, and then it was divided up, presumably it was divided up in some way among the members of the conspiracy? They have to show how much each of them got. They're not going to do this by check. It's all going to be by cash. So how could that work as a practical matter? Well, I think that Section 853d solves at least some of the government's problems in this area, which is this presumption that if you get money during the conspiracy and there's no other likely source, it's attributable to the conspiracy. So the way that would work in practice is suppose a bunch of money comes into a conspiracy, and there's no specific records of how it's distributed, but one day a conspirator, you know, buys a yacht or something or buys a new car. So the presumption in Section 853d allows the court to presume that the car is tainted. It's subject to its, you know, it's because of the tainted money, even without a direct proof that a check was given, which I agree will not typically happen. Did the government ever try to invoke D here? No, Your Honor. There's no record of that at all. The government's entire theory in this case has been this pure jointness-ever-liability. Because this conspirator, co-conspirator obtained the money, he also obtained the money. And what do you do in the situation, similar to what I just described, where members of the conspiracy have spent a lot of money? They've dissipated it in one way or another. So they don't have a yacht or some asset that can be identified. But it's clear that they had a lot of money and they spent a lot of money. Then what happens? Well, I think that, first of all, Section 853 has several powerful tools to determine how much each person obtained. You can take depositions. There's asset breaches. There's a bunch of other things. Oh, come on. You're going to take, you know, a deposition of somebody, a mid-level person in a drug enterprise. How much did you get per week? Well, no. But if you have evidence that the person spent money somewhere, you can go to the place where he allegedly spent the money and try to figure out how much he spent. But, yes, it's true. I can't deny that there's probably some category of cases where forfeiture will be harder under our rule than the government's rule. And we think that's just part and parcel of the statute that requires forfeiture of tainted property, except that certain substitute assets are met. I mean, if you repeal the obtained element, and government is essentially asking for a judicial repeal of the obtained element, then obviously in cases where it's hard to prove the obtaining, the government will have an easier time winning. But I just don't think that's the way that the Court should construe the statute. In terms of background principles, so we've already talked about forfeiture, how there's no background principle of joint and several liability in forfeiture. I think the same is true with sentencing, because the government is essentially saying that forfeiture, which is by statute a component of a sentence, is joint and several in the sense that one person's payment will decrease another person's payment, and that's just never the way sentencing has worked, either in criminal sentences or fines. So we point out that Walter and Daniel Pinkerton, it's true that they were substantively liable for crimes committed by their co-conspirator, but they had individual fines and individual sentences. And that's just part of the traditional principle of sentencing, that it's tied to an individual's culpability. So it doesn't make sense that one person's payment would be reduced based on someone else's plea agreement, because that's not tied to his own personal culpability. So in that sense, joint and several liability is inconsistent with background principles, too. And I think that the overarching point is that this really isn't the application of background principles. I mean, I think that's the deeper point in this case, because this joint and several liability issue has never come up ever in the context of conspiracy law.  It's a matter of policy to apply those background principles from very different contexts to forfeiture law, but alter it in various ways. So there's joint and several liability. It applies to some sections, but not others. And that is just not the way the Court has read criminal statutes. At least the Court does have a number of forfeited appeals on its side, doesn't it? That is certainly true. And if the split does favor the government, we agree. But there's a lot of different ways we point out in our apply brief where the government's position in this case actually diverged to some extent from lower courts. And, in fact, just one very recent development I would raise to the Court's attention. We point out on page 8 of our reply brief that the government's position is, in this brief, is inconsistent with its position in a pending case in the court of appeals. So after I filed my reply brief a couple days ago, the government actually went ahead and confessed error in that appeal, even though it was fully briefed and argued, and I believe it had won in the district court. So I commend the government for doing that. I truly believe they're acting in the utmost good faith. My point is that the fact the government feels compelled to confess error days before a Supreme Court argument in the court of appeals is in some tension, in my view, with this view that there's a stable body of law that the Court should just be ratifying. I think that's just not the case. Ginsburg. Is there any circuit case on the other side other than the D.C. circuit case? No, Your Honor. There's a district court opinion by Judge Tapar called Solomon, which we quote in our brief, which we think is quite persuasive, at least on the reasoning, but no. There's no other court of appeals decision other than Keno Flores, which is found in favor of our position. Is there any indication in the text of 853 that those who framed that and adopted it had conspiracy in mind? I think so, yes. I mean, Section 853a3 is about criminal enterprises, and that was just a form of conspiracy. And that subsection states that you only forfeit your share of the criminal enterprise. So I think that at least as to that subsection, Congress did have at least one form of conspiracy in mind, and the government agrees that under that provision, joint and several liability does not apply. This is a bit off topic, but the statute refers to proceeds that the person obtained directly or indirectly. Do you have a view as to what that indirectly is doing there and what it encompasses? Yes. So, for instance, I think this case is a perfect illustration of what it encompasses. So Petitioner's brother did not personally obtain it. I think the ownership interest was through the corporation that he owned and controlled. And, in fact, there's been several court of appeals cases in which people have been held to have indirectly obtained money when it flows to a corporation that ultimately they're controlling the money. So that's one example of indirectly obtained. Another example would be if, say, you know, Petitioner said, well, you know, I want to pay for my son's college or my daughter's college education, and someone says, okay, well, I'll pay towards that rather than pay to you, that might be an indirectly obtained in the sense of getting the benefit of the money without actually getting it directly. So I can't claim to provide a full taxonomy of all the situations in which someone could have indirectly obtained something, but I think that just the fundamental distinction in this case is between indirectly obtaining and just not obtaining it, which we think is the facts of this case. If there are no further questions, I'd like to reserve my time. Thank you. Roberts. Thank you, counsel. Mr. Fletcher. Thank you, Mr. Chief Justice, and may it please the Court. The law treats a conspiracy as a partnership in crime, and for that reason, it has long been the rule that the acts of every member of the conspiracy in furtherance of the common plan are attributed to every other member of the conspiracy. And that's obviously the foundation for the familiar Pinkerton rule of substantive criminal liability, but as we explained in our brief, that same insight, the attribution of the acts of one conspirator to all of the other co-conspirators, also controls the law's treatment of conspirators in various other contexts. Well, that, Pinkerton, it's based on a fiction, right? I mean, the defendant may not have been there when the acts were committed. Somebody else may have done it, but because he's a conspirator, you treat it as if he had done that. Yes. I'm not sure that that theory works when you're talking about a more focused statute here, where you're talking about only the tainted property. And I'm not quite sure that that works, because as soon as you engage in a that fiction, it takes that focused, tainted requirement away. So I disagree, Mr. Chief Justice, and I'd like to explain, because I think this has gotten confused, this broader issue of tainted versus untainted property and how that maps on to our view of conspiracy liability. I think the reply brief confuses our position on that, and I don't fault my friend for that, but I'd just like to lay out our understanding of how it works. Section 853a1 makes the forfeitable proceeds, the tainted property, or the tainted proceeds the forfeitable property. So if you have two guys who sell a bunch of drugs, they do a drug deal, and they get a duffel bag full of cash, the proceeds, the property constituting the proceeds that's forfeitable under a1 is the duffel bag full of cash. And if the police catch them on the way back home after the transaction, those specific proceeds are forfeitable, and that's what the government has to seize, and that's what's forfeitable under 853a1. And in that circumstance, I think we'd say they're both liable for the forfeiture. The government doesn't have to prove which of them is responsible for the cash. But it doesn't make sense to talk about that in terms of joint and several liability, because joint and several liability is a concept in law that comes into play only when a person is entitled to recover some sum of money, and it can collect that sum from anyone. Robertson, I don't know who's carrying it. They both have the duffel bag and all that. And you say, well, they're both liable for the duffel bag. But then one of them takes the duffel bag and, you know, buys a car with it. And your theory is that the other guy is responsible for the value of the car. Right. Is that very often when people are ---- And your theory also is, if the other guy, you know, just dropped the person off, had nothing to do with getting the duffel bag or whatever, the same thing happens. He's still responsible to forfeit the value of the car. If it's foreseeable to him, yes. And let me explain why I think that makes sense. It's because if you find ---- if you're in the situation where you still have the duffel bag, you still have the traceable proceeds, that's what's forfeitable. If you're not in that situation anymore, if, as is usually the case by the time drug defendants or RICO defendants are caught, it's been dissipated, it's been commingled, it's somehow unavailable, that's the garden variety typical case. Everyone agrees that in that circumstance, the government is entitled to recover the value of the proceeds that have been dissipated. And there's some disagreement about why that is and how that works. And I'm happy to talk about that. But I think for purposes of the question presented in this case, everyone agrees that the government is entitled to get that value of the dissipated proceeds. Sotomayor, do you have to show one of these five preconditions in P? So to invoke P, P is a procedure that allows the government to forfeit specific substitute assets in a defendant's hands, a car, a house, something like that. If the government's going to invoke P, the government has to show that one of those five preconditions for P has been satisfied. Roberts As to one person, though, not to the other. In other words, if we have a chauffeur who drives the Kingpin around, and therefore he is going to be a co-conspirator, and the Kingpin does, you know, gets the drug money, decides to buy a Ferrari with it, then sells it. I mean, he has the cash, but you can get that cash from the chauffeur. You don't have to trace it to him somehow. Because he's a co-conspirator under Pinkerton, he is considered to have obtained what anybody else had obtained. That's correct. If you're in a situation where the traceable proceeds aren't available, then you're in a joint and separate liability situation in our view. Roberts But then I wonder why you call them traceable. I think your theory applies even if they're – you don't have to show that they're traceable. I mean, if you can show they're traceable, he used the drug money to buy the Ferrari, are you saying that then the co-conspirator, the chauffeur, is not liable for those proceeds? If the Ferrari is within – if the government has the ability to forfeit, the Ferrari still falls under subsection 853A1. It's property – any proceeds the person obtained directly or indirectly, and that's property derived from those proceeds. If the government can actually show that the duffel bag full of cash was converted into a specific car and that car is available to the government and can be forfeited, that's what's subject to forfeiture. Kennedy But it's odd that you use P, which applies to substitute property, but you apply it even though this particular defendant or this particular person did nothing to place the proceeds beyond the reach of the court. That's right. And I think the reason why we would do that, when P comes into play, and I want to get back to an answer to Justice Kagan's question, we don't think that the only way that the government can recover dissipated – the value of dissipated proceeds is by invoking P. But when P does come into play and when the government is seeking to rely on that, it relies on the same principles of attribution that the Chief Justice's question suggested earlier, that you're liable as a member of a conspiracy not only for your co-conspirators' act in obtaining the proceeds, but also for any act that results in the dissipation of those proceeds. So in other words, you're saying that the defendant in P is the same as the person in A, and both includes co-conspirators as well as the actual defendant or person? I think we agree with the result. I'd just quibble with the reasoning a little bit. The person being described is the defendant before the court, is the person before the court. Under Pinkerton principles, though, that person's is responsible for, the activist co-contributors are attributed to him as a matter of law. And we think that's true under A-1 for the act of obtaining property. We think that's also true when his co-conspirators dissipate the property or take other action that makes it impossible for the government to trace the property. Breyer, where does it say that? I mean, I didn't take that quite in. You're saying the word property in A-1 is the tainted property. Correct. Okay. And so the defendant is liable for the tainted property. And then P gives some circumstances where he's liable for other than the tainted property. All right? Correct. And it doesn't say in A-1 that a person who doesn't have the tainted property is liable in an equivalent amount. It doesn't say in P that outside those circumstances the person is liable for an equivalent amount. It doesn't say in common law where you had to proceed against in rem the property. And there was no way to get the money from a person who didn't actually have it, because you had to have the property itself in the proceeding. So there's no common law source. It doesn't say it in P. It doesn't say it in A. And indeed, Congress said when they passed this that these are the exhaustive. We want to be we're not adding to anything. We're trying to make it exhaustive. So just where in the statute does it give you the authority to draw the conclusion that you're drawing? I think in two ways. Both of them rely on background principles of conspiracy liability, but they do so in slightly different ways. And so the first one is just to read the text of subsection A in light of the background principle of conspiracy liability that informs Pinkerton and everything else. And when it says a person is liable to forfeit any property constituting or derived from any proceeds of the person obtained directly or indirectly. Here the person didn't obtain it in any common English thing until you're saying what that word obtained means is property he didn't obtain. Justice Breyer. But then his proconspirator came and you say let's look to the common law, and the common law made that argument impossible. Because if you look to the history of it, as I said, you had to have the property itself in an MREM proceeding. So that's why I asked the question. I understand the question, but I just want to emphasize that every single application of the Pinkerton principle to a substantive crime is atextual and would be subject to exactly the same criticism. So in a closely related context here, 21 U.S.C. 841a makes it unlawful for any person to distribute a controlled substance. And subsection B says any person who violates subsection A can be sentenced. And yet all of the time, it's hornbook-wide. It's undisputed. Breyer. That's why I mentioned the fact that if you go back into the history of the forfeiture, it's quite different from that. The history of the forfeiture was you had to have the property itself. And certainly, if we're looking to history and tradition, history and tradition are the one thing when you're talking about criminal liability. And it seems to me, which is why I asked, quite the opposite when you're talking about forfeiture. So the tradition that you're referring to is a long tradition of civil in REM forfeiture that this Court has discussed in many of its opinions. And I think the statute before you today is a very self-conscious departure from that, both in terms of making goods. I'm sorry. Finish your answer. I was just going to say in two ways, both in terms of what's forfeitable. Proceeds forfeiture was new in 1970. And criminal in personam forfeiture was also new when it was enacted under the Jordan-Rico statute. I understand the idea that you argue this is not in REM. But when you as soon as you say, but we're only after the tainted property, it sort of sounds like you're in REM under another label. In other words, you're sticking with this piece of property, just as if you were proceeding in an action against in REM against the property. So I don't see how you can say it's not in REM, but we're only going after the tainted property. I understand that tension, Mr. Chief Justice. I think it's baked into the statute. The statute describes property that's forfeitable. And as this Court knows from Luis, there are provisions 853C and E that talk about restraining a tainted property before trial, and they talk about the relation back of the government's title on tainted property. But the statute also makes clear that when that tainted property isn't available, it hasn't been successfully restrained, the government can recover the value of it, and it becomes an impersonal liability. Sotomayor, I'm having trouble with just one component of your argument, many, but one that, for the moment, which is the one that led the one court who's against you on this issue was the courier who receives $50 a week or $50 a trip to deliver drugs. Yes. Under your theory, that courier who, on everyone's facts, doesn't see more than $50 of whatever the profit is of this drug enterprise, that courier is responsible for a million-dollar, two-million-dollar, three-million-dollar criminal conspiracy because he took an undisputedly small part. Now, assume what logic in in-rem theory would ever make a person who's never obtained that money, those proceeds, responsible for the larger sum? So why should the drug dealer who, in fact, got all of the money, minus $50 a week, minus $50, why should he be off the hook for even a penny less than what he put in his pocket because the courier happened to have $100 saved? So I want to start with the courier and explain that the limits of the courier's liability are going to be the scope of the Pinkerton principle, the scope of the conspiracy that he agreed to join, and the proceeds that were reasonably foreseeable to him. And so he can't be held liable for forfeiture of the proceeds of a drug transaction under our theory unless, under Pinkerton, he could be convicted and sent to jail for the act of carrying out the transaction. It doesn't extend an inch further than Pinkerton liability does. Sotomayor, that's generally what a courier is responsible for that, for the drug deals he or she is involved in, and for those that are reasonably within the scope of the conspiracy. And the only point that I'm making, and I don't think it's disagreeing with anything that Your Honor has said, is just that we don't think it's a great leap to say that once you're in a conspiracy, that has consequences for your liability. One of them is that you can be convicted for the crimes that you're supposed to be able to convict. Sotomayor, and this is a financial penalty that attaches to drug offenses. Sotomayor, but why does that give you, assuming you're a victim, the government, greater rights against that one individual as opposed to what forfeiture tends to mean against the proceeds of the crime? Yes. You're getting a remedy that's literally unheard of in the background principles of forfeiture. I agree with you that it's unheard of mostly in the NREM context, but this is an in personam liability that's very different from that. In what other setting, other than in RICO and 853, in what other setting of law has a similar concept ever existed? So it depends on what you mean by similar concept of law. I think the concept where you're going to be personally liable for something greater than what you directly obtained. So I think one is the restitution context. We point out that criminal defendants are held jointly and severally liable to pay restitution to victims. That's now specifically authorized by statute, as we explained in our brief. Courts of appeals applied the same background principles we're invoking here to reach that result even before that. I also want to emphasize, Justice Sotomayor, that some of your question and some of the appeal of Mr. Unikowsky's argument comes from the intuition that the alternative to the rule that we're asking you to endorse that's prevailed in nine circuits for, in some cases, decades, is a scheme in which the only thing that a courier or a conspirator is required to forfeit are the proceeds that he actually has or that he somehow got to enjoy for himself. And that is not the law. That's not the statute that Congress enacted. Ginsburg. May I, Mr. Fletcher, go back to your saying that now this is in personam, no longer in rem, but in personam generally, there would be a right of contribution. And I take it under your theory, suppose the brother who was merely the employee of the shop, as the government goes after that brother for the $269,000, and so the brother who owns the store is now off the hook. The brother that the government went after would have no right of contribution. He would just be stuck with the whole thing, even though the one who obtained the proceeds is going to go home free if the government decides to make a bargain with that, with that defendant. They will forget the forfeiture in your case. You're correct that there's no right of Federal contribution. I think it's possible that someone could seek contribution under State law. I'm not aware of any case where that's happened. And I don't know that any State would recognize such a cause of action. But I just want to emphasize, I don't think that's an anomalous result, because as we point out in our brief, the traditional rule was that tortfeasors who were held jointly and severally liable did not have a right of contribution if they committed an intentional tort. And here it's joint sever liability arising out of a criminal act, knowing participation in a criminal conspiracy. Kennedy, of course, under your theory, if it worked the other way around, if they went after the brother that did get the money and took it, he would then, under your theory, have a right of contribution against the brother who got nothing. That's your theory. No. Our theory is that there isn't – I'm saying I agree there isn't a right of contribution, that it's joint and sever liability. Suppose it's under State law. Under your theory, there would be contribution, I would assume. If a State law would recognize a right to contribution under these circumstances, then the scope of it would be up to State law. I suppose someone made to pay the forfeiture judgment could seek contribution from the person who wasn't. If they applied your precedent, the brother who got nothing would still have to pay half. That's your precedent. That's your theory. I don't know what principles, if, as I said, I'm not aware of any State law that has actually recognized this. I'm not suggesting that they would. I just wanted to complete what source of law might govern the question if it did exist. I don't know what principles they would apply.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.    Well, I mean, I'm saying that again that Conspirator A takes it, but you have Conspirator B before you. He has not taken the money. Now, do you first have to show that Conspirator A's money? Because it's, do you have to show that it's unavailable? Do you have to show that Conspirator A has dissipated it? Or do you not have to show that? I think we have to show that it's unavailable to the government in that proceeding. So if In that proceeding. Right. If there, if you could go after Conspirator A, you could find it. You just put it in a bank account. But that's irrelevant. I mean, that, yes. I mean, most of the time, people who are, this happens, comes up in cases where defendants are prosecuted together. And so the question is, if any of them have it, the government's going to have it available to the government there. So really, you're only saying it has to be unavailable as to Conspirator B. You do not have to prove that it's unavailable as to Conspirator A. You could know that it's in Conspirator A's bank account. It doesn't matter. As long as you can't get it through Conspirator B, you can go after B for substitute assets. I think that's right, though I want to be candid. I'm not aware of a case that addresses the question. You could disagree with me about that and not disagree with me about what the rule ought to be. Okay. So then let's leave that to, let's bracket that. Then as to B, who you do have in front of you, you started by talking a little bit about this P section. Do you have to prove that one of these five preconditions in P is satisfied? In order to forfeit substitute property under P, and before you continue, I just want to put on the table that our view is that the government doesn't have to invoke P. It can also obtain a forfeiture money judgment if the directly forfeitable property isn't available. Okay. I'm curious about that, but first let's talk about P. Sure. Yes. If you're trying to forfeit substitute assets under P, P has requirements. You have to show that one of the five of them is satisfied. And have you shown that in this case? I believe that we have, yes. Which one? I believe that we've shown, I think, a number of them cannot be located upon the exercise of diligence and has been commingled. And I want to emphasize because of this. And when you say that you've shown that, what do you mean? What I mean is that in this is the understanding in which the case was litigated in district court. The government came in and sought a money judgment, and there was no mystery about what the rules were. I want to quote to you from the defendant's forfeiture memorandum in the district court. It appears as document number 107 on the district court docket. And this is on page 2, quoting from a Sixth Circuit decision. And it says, where the government is unable to recover the actual property that is subject to forfeiture, the government can seek a money judgment for an amount equal to the value of the property that constitutes the proceeds of the drug violation. Now, Petitioner could have argued that the prerequisites for seeking a money judgment weren't satisfied, either because we can't get money judgments and have to go through P, or if we do have to go through P that we hadn't satisfied those prerequisites. We could have made the showing, I think we could have, on these facts. But Petitioner didn't make those arguments. The only argument that Petitioner made that's relevant to the question presented here is that he couldn't be held jointly and severally liable on a money judgment. That's the argument that the district court adopted.   Either way you go. Breyer. Breyer. Breyer. In your answers, I take it, it happens to say, and we're trying B, and A is around, but we're trying B who's gotten nothing. Now, it says you can use 853P. If the property described in subsection A as a result of any act or omission of the defendant. Yes. Now, it wasn't the act or omission of the defendant. It was A who mixed the money, who hid it, who went to Mexico, et cetera. But you're saying you still can get it from B. And I guess your reasoning is somehow these words, am I right? In A, any property constituted or derived from any proceeds, the person obtained, okay, you say that includes money that his co-conspirator obtained because of the under --" okay. If that's so, I just want to be sure. When we get to E, which is called protective orders, I suppose on your theory that we have five people in a conspiracy, two, three are couriers, you know, they were found somewhere on a beach, and they drove a truck, and they have nothing, or they each have about a thousand, no, not nothing, but $100,000, and then we have A and B who are the leaders, and they have about $10 million. So on your theory of protective orders, you issue a protective order against all their assets, all five, and they can't hire lawyers, a matter which is a different issue, I understand. They can't hire lawyers. They may have to pay, even though the money is way over there with A and B. I mean, it does bother me that they can't even hire lawyers on your theory. But I want to be emphatic, that's not the result of our theory. Why not? Because as we explain in our brief on pages 35 and 36, subsections C and E, which deal with pretrial restraints in relation back, are limited to the property described in subsection A. In the hands of either a particular defendant in a non-conspiracy case or when you're dealing with conspirators, that is our position is specific tainted property. All right. Now, suddenly it seems to me we've switched meaning here, because now we're talking about the bag of money. Now, does the word property, the bag of money in A, mean the bag of money and not the substitute in B's bank account, which has never seen the light of day in any crime, or doesn't it? I think the specific property described in A is the bag full of money. Okay. But A in the statute serves two functions. It describes that specific property. That property is forfeitable if the government can find it. But if, as is usually the case, the government can't find it, that property fixes the amount of the government's entitlement to recover forfeiture. Breyer. And you're able to do that under what statute? You see, everything until you said, ah, you see the last clauses here, I could follow in a statute, a statute that Congress said this is pretty exclusive. Now, it's only the things following that qualification that I can't find in any statute. So one way that we can definitely do that is through the substitute assets provision in Section 853p. And as we explained, we think you can apply the same principles of attributed liability to a co-conspirator's act of dealing in cash or laundering proceeds  Breyer. Well, P unfortunately says because of an act or omission of the defendant. And then it adds, an act or omission of the defendant in, I think, respect to property described in A. That's correct. All right. Now, is this mysterious bank account which never saw the light of day within A, or isn't it? Now, it sounds to me, and I know it does honestly sound that way, sometimes you seem to say yes, and sometimes you seem to say no. Justice Breyer, I apologize if I'm not being clear. I think our view is that if the – let's take it back to the very simple example where it's a drug deal that's done and the proceeds are a duffel bag full of cash. That's the property described in A. That's the property that's forfeitable under A. But if, as is usually the case, that property is gone and not available, the government can recover its value. One way that it can do that is through P. Another way that it can do that is, as my friend mentioned, P didn't come into the statute until later. It came in in 1986. The original statute was enacted in 1984. And under the original statute, defendants made the argument, because the property described in A are the traceable proceeds, if I've hidden the proceeds, if I've dissipated them, if you can't find them when you convict me, you can't hold me liable for a forfeiture. Ginsburg, can you go over – can you go over – Justice Breyer brought up the question of counsel fees. So let's take our shopkeeper employee. He says, yeah, I have $60,000, but if I pay it over to the government, I won't have a cent left to pay my lawyer. So in a pretrial world, the government can't stop him from using his funds to pay for a lawyer if those funds are untainted. Section 853e is the provision that allows pretrial restraints. We explain it's the government's position that that does not apply to untainted assets. That was the position of the majority of the courts of appeals. As my friend pointed out, the Fourth Circuit had a different rule. The government filed a brief in a case in the Fourth Circuit that took a position that was consistent with circuit precedent but inconsistent with the position we took in our brief here. And we've now withdrawn that and asked the Fourth Circuit to remand. Robertson, I don't mean to interrupt you, but the substitution principle doesn't apply with respect to assets that you can seize that are needed for counsel fees? The substitution principle doesn't apply because that's right, exactly. The courts have addressed the issue, and we're conceding that this is the right reading of the statute, is that P describes substitute assets, E refers only to property that's described in subsection A, and that's the specific tainted proceeds. I want to come back, if I could, to Justice Kagan. You've asked questions about indirectly to my friend, and I actually think that's another way to get to the other way to read the statute to get to our result, which is that everyone agrees that this statute requires the forfeiture of proceeds that a defendant does not obtain personally, that he obtains indirectly. And some of the examples that my friend gives are if the proceeds go to a cut-closely held corporation or to a lawful partnership or something like that. And our view, and this is reflected in the courts of appeals decisions, is that it would be particularly odd to depart from the traditional principle that one member of a conspiracy is liable for the acts of the other members of a conspiracy in a context in which the statute invites forfeiture of proceeds that a person doesn't obtain personally, because the law regards a conspiracy as a partnership where all of the members are partners and act as each other's agents. And we don't think it's any great leap to say, as the courts of appeals have done, that you indirectly obtain proceeds when the criminal enterprise of which you are a part obtains those proceeds, and the government doesn't have to show how the funds trace through the conspiracy and who actually ended up with how much, because you're all fairly regarded as indirectly obtaining the proceeds that were obtained by the conspiracy as a whole. The other point that I want to make is that I.  Mr. Fletcher, if I could, I'm awfully sorry, but let's take the caseway there. One takes the cash and it's in the basement, but the other one is the one before you, right? And let's put aside these extra statutory money judgments, since I don't understand really how that works, so let's just focus on P, all right? Now, did you You said you don't have to show that it's really unavailable. You just have to show that it's unavailable as to the conspirator before you. Unavailability to be forfeited in the proceeding before the Court, yes. Yeah. And then how do you show that these P conditions have been met as to that particular person? In other words, he never had the proceeds. So which acts could he have taken that dissipate the proceeds under P? Because the P conditions aren't focused so much on the person. They're focused on rendering the property unavailable. So the question is, was it an act? But the other case It begins by saying act or omission of the defendant. Correct. Yes. But our view is that the defendant is accountable for the acts of his co-conspirators and further conspiracy. But you just said that the other conspirator might not have dissipated them at all. They're sitting in his basement. So I think in that case, Justice Kagan, I think our view would be we could make the showing under P that they're unavailable to the government, because in this case, presumably, the government doesn't know that they're sitting in the other conspirator's basement. Because if the government did, they'd be prosecuting that guy and attempting to recover the proceeds from him. You have your choice of getting the money either from the guy who is holding it in the basement or from the other guy, right? Now, you can choose. It's not a precondition for you recovering from the whatever it is, the chauffeur, the bag man, to show that the money is not available from the kingpin. The question is, is it available to be forfeited in the proceeding before the court? No. If you're only proceeding against the one guy, you can get the money from him, even though the money is sitting in a bag in the kingpin's basement. Correct. Yes. But I just want to be clear. And even though you can't show that this is why I keep on coming back to these that led to the dissipation of the assets in these particular five ways? Well, if that's the case, Justice Kagan, you might disagree with me about how to read P. And if you read P that way in the hypothetical that you've described, then that defendant would have an argument that the government couldn't invoke P as to him. But I really think a lot of the discussion that we've had about how P works and how money judgments works are really ancillary. They inform the question presented, to be sure, but they're not the question presented. The question, as this case has been litigated and as it comes to the court, there's no question that the government can get a money judgment. There's no question that it can proceed through substitute assets if it can invoke P. The question is, who has liability for the amount? And the rule that was reflected in the decision below, and the rule that we think is correct, is that when the government is in that situation where the traceable proceeds are gone and it's trying to recover the value of the proceeds, how is that liability allocated amongst the conspirators? And we think in accordance with traditional principles of conspiracy liability, the correct measure is the amount that was foreseeable to each conspirator. Because the alternative, and this gets back to the point I made to Justice Sotomayor or was starting to about couriers, is that you're going to be sticking people with liability based on the amount of money that they touched. It's not just the amount of money that they got to enjoy or spend or ultimately keep. It's the amount of money that they obtained. And so when a person sells drugs, he obtains the whole proceeds of the transaction and then passes it along to somebody else. He can be held liable for that entire amount, even though he didn't get to keep all that much of it. That's reflected in the Casey case, which we cite in our brief, and also in Judge Boudin's opinion in Hurley. And we think a system that instead makes forfeiture liability depend on the amount that was foreseeable to the defendant is a more sensible way to allocate the monetary penalty in Section 853. Thank you. Roberts. Roberts. Thank you, counsel. Mr. Unikowsky, 15 minutes. Unikowsky. Unikowsky. Thank you, Mr. Chief Justice. I'd like to begin by responding to counsel's comments about how this case was litigated below. And then I'd like to say a few words about the textual arguments as well as the background principles. So first, in terms of how this case was litigated below, the way the government has litigated this case throughout was its theory that Section 853a1, and specifically the word obtained, was enough to establish joint and sever liability. So what the government has said is that it uses the word obtained, and that simply means that that's imputed to everyone in the conspiracy, and that's enough to establish Petitioner's liability for forfeiture of any amount that was not actually forfeited from Petitioner's brother. And so we have always taken to the position, consistently through that litigation throughout this litigation, excuse me, that that's the wrong reading of Section 853a1. The correct reading is that obtained refers to assets that you actually got. And you can't forfeit tainted assets unless you have them, and so it doesn't apply to untainted assets. So the government's position in this Court is completely different from the positions it took below. It's essentially conceding that under Section 853a1 itself, forfeiture is unavailable except as against the tainted assets. So the government's arguments that it seems that we waived something below is just completely incorrect. It's just abandoned the very theory under which it obtained or under which it prevailed in the Sixth Circuit. So then we get to these issues about 853p and the money judgments, and I think I heard counsel say in his presentation that Section 853p does not provide the exclusive methods for the government to obtain forfeiture against tainted assets. I think that's a reference to the argument in the brief regarding the rules of criminal procedure and that there's forfeiture money judgments discussed in Rule 32.2, and that is just clearly wrong. First, the rule itself says that the government can only forfeit assets that are available by statute. Second of all, the Rules Enabling Act would just obviously prevent the government from requiring forfeiture that is not authorized by statute through a rule of criminal procedure. I think it's pretty clear what this rule of criminal procedure is doing, and we cite an Eighth Circuit case that says what I'm going to say right now, which is to say it says that it's a procedural mechanism of implementing the substitute property provision. So the government can say, okay, we're going to forfeit your substitute property because you spent the money or you hid the money. Maybe you don't have the money right now, but money that's going to come in is going to be property that's substitute property that's forfeitable. So that is a classic purpose of a rule of criminal procedure. It's a procedural rule to implement a statutory entitlement to forfeiture under 853p. It does not expand the government's ability to obtain forfeiture through this joint and several liability system. So when one looks at Section 853p, and when TOCS sees the exclusive method of obtaining forfeiture against untainted assets, that's the criteria in Section 853p, the government doesn't meet them. The government said for the first time in oral argument in this Court that it couldn't locate it through due diligence and maybe this was commingled. It never made these arguments in its briefs, never made these arguments below, and it also never even argued in its oral presentation that its Petitioner himself that did those things or that his co-conspirator's actions can be attributed to Petitioner for purposes of Section 853p. And so the government really has never tried to establish and cannot possibly establish on the facts of this case that it can obtain forfeiture under Section 853p. And just taking a step back, I think it's pretty clear what Section 853p is doing. What that's doing, and the legislative history confirms this, and just the text itself confirms this, is that it's saying that if you obtain a tainted asset and you thwart the forfeiture, you can't get away with it because the government's going to come after substitute assets. So if you collect a million dollars in tainted property and you hide it offshore or you spend it in Las Vegas or something, that doesn't mean you can get away with it. That's why the statute says because of an act of the defendant to render unavailable the property that is described in A, that's a tainted property, if that happens, the government can seek substitute property. And the other one is that the government can seek substitute property. Robertson, it seems to me that's just a reiteration of your earlier argument. I mean, of the defendant in A and of the defendant here. But under Pinkerton, the defendant includes the co-conspirators. But, again, I'd push back against that because I think that's only true. The Pinkerton principle itself says that actions are attributable only in furtherance           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. some theoretical textual argument. Remember, that's focused only on P rather than A, which has been the government's theory throughout. I would still disagree that joint and several liabilities authorize because I just think there's extremely powerful textual, structural, and historical indications that it's just not authorized in the statute. For instance, the comparison with A2 and A3, which the government doesn't respond to, the background principles, which I think just don't work at all. So if I'd like to turn to those, I just don't think Pinkerton has any application in the context of the statute, period. The government talks a lot about Hornbook law and Hornbook law attributing activities to co-conspirators, but I think it's important to recognize that those old Hornbooks would never have recognized the principle that the government is advocating here because the Hornbooks would have talked about sentencing involving no joint and several liability under any circumstances, and those Hornbooks would have talked about forfeiture, which was in rem. Now, it's true that it's in personam rather than in rem now, but there's a – that's a procedural difference in how the money is collected, which is different from saying that there's a difference in what money is collected. In other words, the object of the forfeiture is the same, even the way in which it's collected has changed. And, in fact, the government confirms this when it actually concedes that 853a1 only focuses on the tainted property, exactly like in the in rem forfeiture regime. So I think that's the case. Alitoso, I don't know how much you can get out of the in rem forfeiture case law since this is an in rem. You couldn't have joint and several liability in an in rem proceeding. That is true, Your Honor. So what's the relevance of that? The relevance is that the background principle, these ancient principles that the government tries to involve you in. Alitoso, you had ancient principles of in rem, but this is not in rem. This was a radical change from what occurred before. Right. But the fact that it's in personam versus in rem doesn't change the fact that it's the tainted property that's the object of the forfeiture, which is, in fact, the government's concession. It says a1 is an in personam statute. It's part of a criminal judgment. It's not a separate civil proceeding. But the thing that's forfeited is the same thing that had always been forfeited, which is the tainted assets. So I don't think the procedural change affects the structure of our argument. Breyer. I thought the argument was there simply to say there isn't an old tradition of getting B, who's in the basement, or not. I don't know. I forget where they all are at this point. But they're getting the courier to forfeit his own money, which isn't in the bag. Okay? There isn't an ancient tradition of what they're trying to do. That was the point of the in rem proceeding, wasn't it? That is the exact point we're making, Justice Breyer. Congress said that it not do we do not intend in their report any significant expansion of the scope of property subject to forfeiture. That's your point. That is indeed our point, Justice Breyer. Thank you for articulating it better than I did. I think that there's a broader point here, which is that in criminal — in the interpretation of criminal statutes, I think the Court should be careful of how it uses background principles. And I think it's one thing to say that, for instance, the word conspire has always meant something, and therefore we're going to interpret the word conspire the same way. But that is really not what the government's doing here. It's saying that in 1984, or actually 1986, when Congress enacted the substitute property provision, the law changed in this very fundamental way to permit joint and several liability, which had never existed. But actually, their new joint and several liability system is quite different from old applications of Pinkerton. For instance, it applies only to A-1 and not to A-2 and A-3. And there's different types of forfeitures for everyone in the conspiracy. For the guy who actually obtains it, there's asset freezes. You undo third-party transfers, and not for others. So it seems to me that there's very significant modifications in the government's rule than the traditional Pinkerton rule. So what the government is saying is that silently, Congress enacted — without saying anything in the statute, Congress enacted this very new forfeiture regime, which is similar in some ways and different in other ways from Pinkerton as it had traditionally been applied. And I just don't think the Court reads criminal statutes that way. That's just a classic form of common-law criminal liability. The government is saying, well, here's these concepts from other contexts. Let's modify them in various ways that the government thinks make sense. We don't really have to look at the statutory text, because unavailability just makes sense as a criterion, even if Congress never said it, and therefore we have the system of joint and several forfeiture liability. And the Court just doesn't do that when it reads criminal statutes. We'd certainly ask the Court to just follow the text literally. I'd like to focus on two other arguments made by my colleague, one about restitution and one about contribution. So in terms of restitution, I actually think that the comparison to restitution is quite a strong argument for us, because that's a situation in which joint and several liability makes perfect sense and is also authorized by statute. And those are two good reasons that we have joint and several liability in that context. Joint and several liability works in terms of the purposes of the law when it's compensatory. In other words, money from one person and money from another person are treated interchangeably because the goal is to compensate the victim, and the victim doesn't care where the money comes from. And that is the case in restitution. That's why it's hardly surprising that Congress has enacted a joint and several liability system, while also being careful to say that the Court can mitigate the harsh effects of the joint and several liability as applied to a particular And here, Congress did not say that. It used the word obtained. Yet the government seeks to inflict a much harsher form of joint and several liability, which I think is quite incongruous. And I also think that, unlike the compensatory context, we haven't talked much about the purposes of forfeiture, but they are totally inconsistent with joint and several liability. The Court has articulated remedial and punitive purposes for forfeiture, but neither of those two types of purposes have anything to do with joint and several liability. The remedial purposes of taking the money away from the person who got it are not supported, whereas we see in this case, the person who got the money keeps some of the money. And the punitive purposes, I mean, the goal of punishment is to track the person's culpability. That doesn't happen when the amount Petitioner has to pay is tied to what his brother paid in his plea agreement. That's not a rational method of assessing culpability. On the issue of contribution, so this notion of State law contribution is an issue that the government doesn't raise in its brief, and I'm not aware of any precedent or law that would support that. As far as I've been aware until the oral argument in this case, right of contribution isn't available. Robertson, I didn't understand the argue that there was. I think your friend was just pointing out that if there were an available remedy, it would be under State law. Okay. Well, then I agree with that. That's true. And I certainly agree with my colleague as well that there's no Federal right of contribution at all. I think that's quite important. Counsel says that actually that doesn't matter because under the common law, you couldn't have contribution in intentional tort cases anyway. I think that that's not persuasive for a number of reasons. One is that I think the common law is not so clear, and in fact, modern restatements of the common law have an alternative rule. Second of all, the common law rule as applied to vicarious forms of liability, which is sort of what the government is seeking here, actually would have had contribution. We cite some authority for that in our brief. And finally, in the Paroline case itself, the government itself rejected that argument in its brief, and as did the Court, and the Court said that the absence of contribution remedy is evidence that Congress didn't intend joint and several liability in the first place, and we think that argument applies with full force in this case. If there's no further questions from the Court, we'd ask the Court to reverse the judgment. Roberts. Thank you, counsel. The case is submitted.